# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER M. WHITE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-09-472-M |

## REPORT AND RECOMMENDATION

Christopher M. White ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr."), and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by protectively filing his application seeking supplemental security income payments on September 28, 2006, the day preceding his eighteenth birthday [Tr. 79 - 81and 84 - 85]. He claimed that he has been disabled since the date of his birth – September 29, 1988 [Tr. 79] – by "[d]egenerative disc, scoliosis, enlarged kidneys, functional illiteracy, stomach problems - irritable bowel syndrome." [Tr. 89].

Plaintiff's claims were denied initially and upon reconsideration; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted an October, 2008 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 53 and 18 - 33]. In his December, 2008 decision the ALJ found that while Plaintiff had no past work experience, there were available jobs he was capable of performing and, accordingly, he was not disabled within the meaning of the Social Security Act [Tr. 11 - 17]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 4], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

2

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claim of Error**

Plaintiff's single claim of error is that the ALJ's assessment of Plaintiff's residual functional capacity[1] is not supported by substantial evidence [Doc. No. 17, p. 3].

**Analysis**

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

**The ALJ's Decision**

Based upon his review of the objective medical evidence– including x-rays, school reports, and a mental status evaluation – the ALJ determined that Plaintiff was severely impaired by mild degenerative disc disease, mild scoliosis, attention deficit disorder, and a learning disability [Tr. 13]. In connection with his impairments, the ALJ noted that Plaintiff's family physician had diagnosed him with depression. *Id.*

With regard to the subjective evidence of record, Plaintiff testified that he was twenty years old, had completed the eighth grade, and was currently taking GED classes at a Vo-Tech every Tuesday and Thursday [Tr. 21]. According to Plaintiff's attorney, Plaintiff had "about a one- or two- week period of work[.]" [Tr. 22]. Plaintiff testified that he was unable to work forty hours a week for both physical and psychological reasons. *Id.* Physically, Plaintiff maintained that he had degenerative disc disease, *id.,* which made him dizzy, caused his leg to become numb after sitting for two to three hours, made "it[] hard for [him] to walk sometimes," and caused him constant back pain [Tr. 23].

With regard to mental limitations, when asked if he was able to read and write, Plaintiff stated "[n]ot very much." *Id.* He testified that he was unable to work because "I really can't socialize with too many people." *Id.* Plaintiff affirmatively answered his attorney's question about whether he had "any problems with depression or being sad," [Tr. 24], and upon being asked to describe "what that's like," *id.,* testified as follows:

> A: I, I like - - sometimes, I have to like have a stress ball and squeeze it all the time, because like I get real angry, and I just - - sometimes, I just

4

> get mad at everything, and I have to take my medication, Respiradol, to sometimes help me.
>
> Q: Okay. What makes you angry?
>
> A: Just anything, sometimes.
>
> Q: And what do you do when you get angry?
>
> A: Sometimes, I punch stuff.
>
> Q: Like what?
>
> A: Anything, like my leg, or like anything in the house.
>
> Q: Okay. Do you ever hurt other people?
>
> A: No.
>
> Q: Do your friends or family complain that you're difficult to get along with?
>
> A: Not really.
>
> Q: Okay.
>
> A: Not when I'm on my medication.

*Id.*

As to daily activities, Plaintiff testified that he did no chores around his home – a mobile home he shared with his fiancé, their three-month-old child, her grandparents, and two cousins – and that he would sit and watch television or play a video game, only leaving his home once or twice a week [Tr. 25 - 28]. He estimated that he could sit comfortably for about an hour, could not even stand for ten minutes before needing to sit down to take a rest,

could walk about twenty minutes before resting, and could possibly lift ten pounds [Tr. 29]. Finally, Plaintiff testified that three to four times a week he would stay in bed, only getting up to get a drink or to go to the bathroom [Tr. 29 - 30].

Upon consideration of the objective medical evidence of record and Plaintiff's testimony concerning his subjective complaints, the ALJ found that Plaintiff had the capacity to perform light work requiring only simple, repetitive tasks and incidental contact with the public [Tr. 14]. In making this RFC determination, the ALJ assessed Plaintiff's credibility in the following manner:

> Although the claimant alleges constant pain in his back and left leg, objective evidence shows only mild abnormalities. X-ray of the lumbar spine on September 27, 2005, showed only mild degenerative disease at L5-S1 (Exhibit 3F, p. 20; Exhibit 16F, p. 29). X-ray of the spine on March 27, 2006, showed only minimal scoliosis (Exhibit 2F). Physical examination on January 2, 2007, showed minimal scoliosis and negative straight leg raising (Exhibit 5F). In addition, the claimant takes only ibuprofen for pain (Exhibit 11E).
>
> The claimant was diagnosed with depression by his family physician and receives medication only (Exhibits 11F, 16F, 19F, and 20F). There is no evidence that the claimant has sought or received treatment from a mental health professional. The claimant has a 3-month-old child and lives with his fiancé. He testified that he watches television all day and plays video games. This evidence indicates an ability to concentrate and relate to people.
>
> The Administrative Law Judge does not discount all of the claimant's complaints. However, the claimant's treating physicians did not place any functional restrictions on his activities that would preclude light work activity with the previously mentioned restrictions. The claimant's daily activities appear restricted, but these restrictions are self-imposed. There is no evidence that the claimant's physicians have told him to do nothing all day or play video games all day. Given the objective medical evidence in the record, the Administrative Law Judge finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of his symptoms.

> Two medical experts with the State Agency determined that the claimant could perform simple tasks with minimal contact with the general public (Exhibits 7F and 17F). Two other medical experts with the State Agency determined that the claimant could perform light work (Exhibits 15F and 18F). The Administrative Law Judge concurs with these opinions.

[Tr. 15 - 16].

### Dr. Vaidya's Evaluation

On appeal, Plaintiff does not challenge the ALJ's credibility assessment or his finding that, physically, Plaintiff had the RFC for light work; instead, Plaintiff argues that "[t]he ALJ decision fails to discuss significant relevant evidence pertaining to the Claimant's mental impairments." [Doc. No. 17, p. 3]. The first evidence which Plaintiff maintains that the ALJ failed to consider is the report of Dr. Vaidya, the State agency's examining psychiatric consultant [Tr. 192 - 194, Exhibit 6]. The fact that the ALJ did consider the report, however, is established by his decision where he states that "[m]ental status evaluation on January 10, 2007, was consistent with attention deficit disorder and a learning disability (Exhibit 6F)." [Tr. 13]. It is true, as Plaintiff argues, that the ALJ's decision does not specifically refer to Dr. Vaidya's finding that Plaintiff has difficulties with learning and concentration that affect his functioning. Such a reference is not required,[2] however, because the ALJ's mental RFC restrictions are consistent with such finding.[3] In assessing Plaintiff's mental RFC for the

---

[2]Under the law of the Tenth Circuit, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004).

[3]Plaintiff has failed to cite to any authority in support of his argument [Doc. No. 17,
(continued...)

7

performance of only simple, repetitive tasks and incidental contact with the public [Tr. 14], the ALJ adopted [Tr. 16] the findings of the State agency psychiatric consultant, Dr. Varghese, who, based upon her review of Dr. Vaidya's mental status examination [Tr. 211], concluded that Plaintiff can perform simple tasks[4] with routine supervision but is unable to relate to the general public [Tr. 197]. With regard to the opinions of State agency medical consultants, Social Security regulations provide that

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . .

20 C.F.R. §416.927(f)(2)(i)(emphasis added). Substantial evidence supports the ALJ's mental RFC assessment, and the ALJ committed no error by failing to address evidence not in conflict with that assessment.

Also in connection with Dr. Vaidya's report, Plaintiff speculates that the State agency did not provide Dr. Vaidya with Plaintiff's medical records pertaining to Plaintiff's use of Risperdal or to the opinion of a physician's assistant that Plaintiff had an aggressive conduct

---

[3](...continued)
pp. 3 - 4] that the ALJ was required to make specific reference to subjective statements made by Plaintiff and his mother as reflected in Dr. Vaidya's "History of Present Illness." [Tr. 192].

[4]Dr. Vaidya reported on mental status examination that Plaintiff "had a hard time understanding *complex* questions." [Tr. 192, emphasis added].

8

disorder [Doc. No. 17, p. 4]. Plaintiff's speculation aside, as the Commissioner observes, "Plaintiff points to no authority for the proposition that a consultative physician must indicate what evidence he reviewed or that an ALJ must insure that the record reflects what evidence the consultative physician reviewed." [Doc. No. 18, p. 9].[5]

Finally, Plaintiff suggests [Doc. No. 17, p. 4] that the ALJ erred by failing to address a discrepancy between Dr. Vaidya's finding that on the day of the examination Plaintiff had a global assessment of functioning (GAF) of 60 [Tr. 192] and the State agency psychiatric consultant's finding that Plaintiff had no significant limitations apart from a marked limitation in his ability to understand, remember, and carry out detailed instructions and in his ability to interact appropriately with the general public [Tr. 195 - 198]. A GAF of 51 - 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, functioning (e.g., no friends, conflicts with peers or co-workers)." DSM-IV-TR, at p. 34 (bold-type emphasis deleted). Thus, Dr. Vaidya could have assigned a GAF score of 60 for any number of reasons. In the absence of any narrative discussion by the doctor explaining the rationale behind the GAF

---

[5]While Plaintiff had the opportunity to file a reply brief to contest this or any other assertion advanced by the Commissioner [Doc. No. 14], he did not do so.

assessment,[6] Plaintiff is simply speculating that a discrepancy between the findings of the two physicians exists.

**Plaintiff's Depression and the Findings of Physician's Assistant Green**

Here, Plaintiff maintains that although the ALJ noted at step two of the sequential evaluation process that Plaintiff had been diagnosed with depression by his family physician [Tr. 13], "the ALJ did not specifically make a finding that his depression was severe as defined by Social Security, and, apparently as a result did not weigh the effect of Plaintiff's depression on his RFC." [Doc. No. 17, p. 4]. Where, as here, the ALJ proceeds to step four and a determination of Plaintiff's RFC, error – if any – at step two is harmless. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 679 (10th Cir. Apr. 18, 2008) (unpublished op.). The question for determination, rather, is whether the ALJ properly considered the limiting effects of all of Plaintiff's impairments – including his depression – through the remainder of the determination process. 20 C.F.R § 416.945(e). The ALJ's decision reflects such consideration at step four:

> The claimant was diagnosed with depression by his family physician and receives medication only (Exhibits 11F, 16F, 19F, and 20F). There is no evidence that the claimant has sought or received treatment from a mental

---

[6]By the same token, a GAF assessment cannot establish an impairment absent evidence that the score was related to a claimant's ability to work as compared to some other factor or factors in the claimant's life. *Cainglit v. Barnhart*, 85 Fed. Appx. 71, 75 (10th Cir. Dec. 17, 2003)("In the absence of any evidence indicating that [the mental health evaluators] assigned these GAF scores because they perceived an impairment in [claimant's] ability to work, the scores, standing alone, do not establish an impairment seriously interfering with [claimant's] ability to perform basic work activities.").

> health professional. The claimant has a 3-month-old child and lives with his fiancé. He testified that he watches television all day and plays video games. This evidence indicates an ability to concentrate and relate to people.
>
> The Administrative Law Judge does not discount all of the claimant's complaints. However, the claimant's treating physicians did not place any functional restrictions on his activities that would preclude light work activity with the previously mentioned restrictions.

[Tr. 16]. On appeal, Plaintiff fails to direct the court to any functional limitations resulting from his depression which were not addressed by the ALJ, and the RFC finds evidentiary support in the opinions of Dr. Varghese, the State agency psychiatric consultant [Tr. 195 - 212].

Next, Plaintiff contends that the RFC is deficient because the ALJ did not specifically address the fact that Risperdal was prescribed for Plaintiff [Doc. No. 17, pp. 3 and 5]. To the contrary, the ALJ noted that Plaintiff "was diagnosed with depression by his family physician and *receives medication* only." [Tr. 16, emphasis added]. Plaintiff consistently reported in his claim filings that the reason he was given Risperdal was for depression [Tr. 107, 135, and 139]. And, according to Plaintiff's testimony at his administrative hearing, the medication was effective as he had received no complaints from family or friends that he was difficult to get along with [Tr. 24]. Plaintiff has failed to direct the court to any functional limitation associated with his use of Risperdal that was not considered by the ALJ in his assessment of Plaintiff's RFC.

Finally, Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not address the fact that Dr. Shuart and Mr. Green – a Physician's Assistant –

had diagnosed Plaintiff with aggressive type conduct disorder [Doc. No. 17, pp. 5 - 6]. The undersigned has carefully reviewed the medical records cited by Plaintiff and has been unable to find an indication that Dr. Shuart diagnosed Plaintiff with a mental impairment other than depression [Tr. 169 - 170 (and 263),[7] and 275 - 277[8]]. Mr. Green, however, made the diagnosis of aggressive conduct disorder on numerous occasions [Tr. 216 - 217 (and 241 and 249), 218 - 220 (and 247), 221 - 223, 244 - 246,[9] 272 - 274, and 278 - 280]. On mental status examination on each of these occasions, however, Mr. Green noted no psychiatric difficulties and suggested no functional restrictions. *Id.* It is not until September 22, 2008, that Plaintiff was found on objective examination to be depressed [Tr. 282 - 284, at 283]. Nonetheless, no functional restrictions were noted. *Id.*

According to Social Security regulations, only an acceptable medical source – such as Dr. Shuart, a licensed physician – can provide evidence to establish an impairment. *See* 20 C.F.R. § 416.913(a)(1). As a physician's assistant, Mr. Green is considered an "other source" whose findings cannot establish that a medically determinable impairment exists.

---

[7]Although it is not possible to make out the signature on this treatment note, the undersigned has attributed it to Dr. Shuart.

[8]Here, while Dr. Shuart's treatment note reflects previous problems diagnosed by Physician's Assistant Green – including aggressive type conduct disorder [Tr. 276] – Dr. Shuart's mental status exam showed Plaintiff to have appropriate affect and demeanor [Tr. 277]; no assessment of *any* mental impairment was made by the physician. *Id.*

[9]Mr. Green noted that Plaintiff was moving to Oklahoma City to work for Coca-Cola and gave no indication that Plaintiff was under any restrictions due to his assessed aggressive type conduct disorder [Tr. 244 - 246].

*See* 20 C.F.R. § 416.913(d)(1); *see also* Social Security Ruling 06-03p, 2006 WL 2329939, which states that

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medial source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Id.* at *2.

Plaintiff is simply incorrect in arguing that Dr. Shuart diagnosed Plaintiff with a disorder that the ALJ failed to address. Even if the existence of a conduct disorder impairment had been established by an acceptable medical source, any error by the ALJ in failing to reference the fact that Mr. Green had likewise diagnosed Plaintiff with aggressive type conduct disorder is, at best, harmless where Mr. Green's treatment notes reflect neither symptoms[10] of such disorder nor any work-related restrictions. *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *2.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by December 24, 2009, in accordance with 28 U.S.C. §636 and Fed. R.

---

[10] The one exception is Mr. Green's objective examination on September 22, 2008, when he found Plaintiff to be depressed [Tr. 283]. As previously discussed, however, Plaintiff's RFC accommodates his restrictions resulting from depression.

Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 7th day of December, 2009.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE